IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE ESTATE OF DAVID HARJO, through his duly appointed personal representative, Tim Harjo, | ) ) ) ) |
| Plaintiff, | ) ) ) Case No. CIV-15-1023-D |
| v. | ) ) |
| CITY OF OKLAHOMA CITY, et al., | ) ) |
| Defendants. | ) |

# **O R D E R**

Before the Court are Defendant City's Motion for Summary Judgment [Doc. No. 47] and the Motion for Summary Judgment of Defendants Beasley and Thompson [Doc. No. 49]. All defendants seek a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on Plaintiff's claims under 42 U.S.C. § 1983 and state law regarding the death of David Harjo. Plaintiff has filed timely responses [Doc. Nos. 59 & 61], and Defendants have filed reply briefs [Doc. Nos. 63 & 65]. Thus, the Motions are fully briefed.

**Factual and Procedural Background**

Plaintiff Estate of David Harjo, through its personal representative Tim Harjo, filed this action in state court on July 30, 2015, against the City of Oklahoma City alleging that the death of David Harjo was caused by an injury sustained in the custody of two of the City's police officers. Following a motion for dismissal, Plaintiff amended its pleading to assert two alternative claims: 1) against the City for negligence or misconduct of the police officers, seeking damages pursuant to the Governmental Tort Claims Act ("GTCA"), Okla.

Stat. tit. 51, § 151 *et seq.*; and 2) against the police officers, Jonathan Beasley ("Sgt. Beasley") and Jeremiah Thompson ("Officer Thompson"), for intentional use of force in violation of the Fourth and Fourteenth Amendments, seeking damages under 42 U.S.C. § 1983. Defendants removed the case to federal court based on subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

Briefly stated, Mr. Harjo's death on April 17, 2014, was caused by an acute subdural hematoma or hemorrhage due to blunt force head trauma. Plaintiff claims Mr. Harjo suffered his fatal injury at the hands of the City's police officers. According to Plaintiff's pleading, Officer Thompson and Sgt. Beasley transported Mr. Harjo from Deaconess Hospital, where he received emergency treatment for chest pain on April 13, 2014, to the Public Inebriate Alternative Facility or "detox" center; and then transported Mr. Harjo back to the hospital a short time later because the detox center refused to admit him. Plaintiff alleges Mr. Harjo was examined upon his return to the hospital and found to have suffered a head injury and subdural hematoma that resulted in his death three days later.

Defendants move for summary judgment on the grounds that Plaintiff lacks any evidence to establish Mr. Harjo's fatal injury occurred while he was in police custody and thus Plaintiff cannot prevail on either an excessive force claim against the individual officers or a claim against the City. Specifically, Defendants contend the facts developed during discovery do not support a reasonable inference that Officer Thompson inflicted any blow or head trauma to Mr. Harjo, and a video recording of Sgt. Beasley's only contact with Mr. Harjo at the detox center negates any claim against him. Plaintiff vigorously

disputes the first contention but abandons its claim against Sgt. Beasley, affirmatively stating in response to his Motion: "No Claim Is Pursued Against Beasley." *See* Pl.'s Resp. Br. [Doc. No. 59] at 23.[1] The City asserts additional grounds for summary judgment based on certain exemptions provided by the GTCA. Plaintiff disputes the applicability of these exemptions under the circumstances of this case.

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.*

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be

---

[1] Plaintiff's action against Sgt. Beasley was subsequently dismissed upon a joint motion of the parties pursuant to Fed. R. Civ. P. 41(a)(2). *See* Order of Dismissal [Doc. No. 62].

identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**Statement of Undisputed Facts**

David Harjo's death was caused by an acute subdural hemorrhage due to blunt force head trauma; other significant medical conditions were cirrhosis, alcoholism, and pneumonia. Plaintiff claims Mr. Harjo suffered his fatal injury in the custody of Officer Thompson, who transported Mr. Harjo from the emergency department of Deaconess Hospital to the detox center shortly before midnight on April 13, 2014. An ambulance had brought Mr. Harjo to the hospital earlier that evening for evaluation of a complaint of chest pain; no medical personnel documented a head injury at that time. The ambulance workers were familiar with Mr. Harjo from prior encounters related to his alcoholism; they noticed a different demeanor on this occasion in that he was less belligerent and did not need to be restrained, but they noted no recent injury to his head.

The hospital nurse assigned to Mr. Harjo's case, Wynesha Kirk, has testified that Mr. Harjo was responsive and ambulatory during his assessment, throughout his hospital stay, and when she discharged him.[2] Ms. Kirk noted abrasions and bruising on Mr. Harjo's forearms, but no injury to his head. After his discharge, another hospital employee, Mark

---

[2] A hospital test showed Mr. Harjo had blood alcohol level of .389 so he only could be discharged to a detox center; his level of intoxication required further medical supervision.

4

Woodruff, transported Mr. Harjo by wheelchair to the police car and placed him in the back seat with assistance from Officer Thompson. There is conflicting testimony regarding Mr. Harjo's responsiveness at that time. However, a video recording made by a hospital security camera shows Mr. Harjo slumped in the wheelchair and appearing to drag his feet while being transported to the car; Mr. Woodruff was pulling the wheelchair backwards to prevent Mr. Harjo from slipping down. Mr. Woodruff bumped Mr. Harjo's head with the car door during the transfer process, but the degree of force was not significant and did not cause a visible injury.

At Officer Thompson's request, Sgt. Beasley met him at the detox center to help remove Mr. Harjo from the police car. A video recording taken by an outdoor security camera at the detox center shows the two officers lifting Mr. Harjo from the back seat of Officer Thompson's patrol car and placing his body on the ground, where it remained until an ambulance arrived. The detox center refused to accept Mr. Harjo. An ambulance transported Mr. Harjo back to Deaconess Hospital shortly before 1:00 A.M. on April 14, 2014. An abrasion on Mr. Harjo's forehead was first documented by medical staff at that time. Sgt. Beasley had also noticed a small amount of dried blood on Mr. Harjo's forehead. The autopsy report notes a "[l]inear healing abrasion, 1 cm, right forehead, with underlying right frontal subscalpular [sic] hemorrhage." *See* Pl.'s Ex. 18 [Doc. No. 59-18].[3] Upon

---

[3] The full autopsy report was submitted by Plaintiff in two exhibits to its response briefs. *See* Pl.'s Exs. 18 & 19 [Doc. Nos. 59-18, 59-19, 61-18, 61-19]. A copy of the autopsy report was also submitted by Defendants with their Motions. *See* Defs. Beasley & Thompson's Ex. 21 [Doc. No. 49-21]; Def. City's Ex. 48 [Doc. No. 47-48].

Mr. Harjo's return to the hospital, he was diagnosed with a subdural hematoma and transferred to OU Medical Center, where he was given palliative care until his death on April 17, 2014.

There is conflicting testimony of fact witnesses and a medical expert relevant to the question of whether Mr. Harjo's head injury occurred during the period of time he was in the sole custody of Officer Thompson. Defendants believe Mr. Harjo had a prior injury that was not visible or was overlooked on his first hospital visit, and his condition gradually deteriorated and went unnoticed by medical providers (possibly due to his intoxication) until he reached the unresponsive state in which he arrived at the detox center. Defendants present facts to show Mr. Harjo had experienced falls and blows to his head earlier in the day on April 13, 2014; that ambulance and hospital staff knew Mr. Harjo from frequent falls and emergency medical services related to his alcoholism, and his demeanor that day was different from his usual behavior; that Mr. Harjo had already become less responsive before he was placed in the police car; and that he had a medical condition of coagulopathy as a result of his alcoholism that interfered with blood clotting so a fall or blow could result in a subdural hematoma even though there was no visible injury. Plaintiff relies heavily on the fact that Mr. Harjo's head injury was first noticed after he left the hospital and a lack of evidence showing symptoms of a subdural hematoma before Mr. Harjo arrived at the detox center.

**Discussion**

**A.    Plaintiff's § 1983 Claim of Excessive Force**

Plaintiff's claim against Officer Thompson is governed by the Fourth Amendment's protection against unreasonable seizures, which prohibits a police officer from using excessive force against a person.[4] A Fourth Amendment claim of excessive force is governed by an "objective reasonableness" standard. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010); *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009). According to the Supreme Court,

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotations omitted). The reasonableness inquiry is an objective one, taking into account a totality of the facts and circumstances confronting the police officers and balancing the pertinent factors. *See Thomson v. Salt*

---

[4] Plaintiff also cites the Fourteenth Amendment in its pleading, but in its response brief, Plaintiff explains this citation by noting the Fourteenth Amendment operates to extend the Fourth Amendment to state actors. Plaintiff denies bringing a separate Fourteenth Amendment claim. *See* Pl.'s Resp. Br. [Doc. No. 59] at 20-21. Thus, the Court addresses Plaintiff's §1983 claim solely under an excessive force theory of liability.

7

*Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009); *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).

This case, however, does not involve the typical reasonableness inquiry. Everyone agrees Officer Thompson had no reason to use force against Mr. Harjo and, if he did, Plaintiff would have a valid § 1983 claim. Instead, Officer Thompson bases his Motion on an alleged absence of evidence from which to reasonably infer that he used any force at all. Officer Thompson relies on the testimony of eyewitnesses and video evidence that he did not strike Mr. Harjo at the hospital or the detox facility, and he argues:

> [T]he only time Officer Thompson was alone with Harjo was during the drive between Deaconess and detox. There is a metal and plexiglass divider between the front and back seats of the police car. Thus, in order to strike Harjo with a flashlight [as suggested by Plaintiff], Officer Thompson would have to stop, exit his vehicle, open the back seat, strike Harjo, return to the driver's seat, and resume the drive to the detox center.

Defs.' Mot. Summ. J. [Doc. No. 49] at 12 (citations omitted). Officer Thompson contends this scenario is "pure speculation" and insufficient to support a jury verdict. *Id.* He asserts that other possible causes of Mr. Harjo's head injury provide a more likely explanation.

The question presented for decision, however, is whether Plaintiff has identified sufficient facts and evidence from which a reasonable factfinder could conclude that Officer Thompson delivered a blow or caused an application of force that resulted in Mr. Harjo's head injury and hematoma. In considering this question, the facts and evidence must be viewed in the light most favorable to Plaintiff, as required by Rule 56. In the Court's opinion, the summary judgment record in this case presents a close question, but one that a reasonable jury could answer in Plaintiff's favor.

Regardless whether hospital personnel properly evaluated Mr. Harjo's neurological condition on his first visit, the record establishes that during Mr. Harjo's hospital stay and when Nurse Kirk discharged him, Mr. Harjo was able to talk, respond to questions, and ambulate to some extent. The hospital video and the testimony of Mr. Woodruff and Officer Thompson show that Mr. Harjo required physical assistance to be placed in the back seat of the patrol car when he left the hospital, but he was responsive.[5] Mr. Harjo was alone with Officer Thompson for approximately 15 minutes during the car ride from the hospital to the detox center.[6] The video evidence and all eyewitnesses agree Mr. Harjo was unresponsive when he arrived at the detox center.

A visible head injury – an abrasion on Mr. Harjo's forehead – was first documented and treated after he returned to the hospital. Also upon his return, the pupils of Mr. Harjo's eyes were found to be unequal, unlike their condition on prior examinations. Plaintiff also points to testimony of Defendants' medical expert, Dr. Benjamin White, that whatever caused the abrasion was capable of causing a subdural hematoma and that Dr. White could not exclude the possibility that Mr. Harjo's head trauma occurred in Officer Thompson's

---

[5] Mr. Woodruff testified that he recalls Mr. Harjo complying with directions of the nursing staff, standing up to get out of the wheelchair, responding to instructions, and making oral responses (although he did not speak). *See* Woodruff Dep. 37:22-24; 58:12-25; 68:19-69:3.

[6] The record reflects a time lapse of approximately one hour between Mr. Harjo's leaving the hospital and returning to it. The video recording at the detox center shows 30 minutes passed between the time Officer Thompson's car arrived until the ambulance left the detox center. The other half hour was split between the travel time to and from the detox center. According to police department records – the accuracy of which Plaintiff does not dispute – Officer Thompson left the hospital at approximately 11:39 P.M. and arrived at the detox center at approximately 11:52 P.M., a period of 13 minutes. *See* Def. City's Mot. Summ. J. [Doc. No. 47] at 11-12, ¶ 33.

custody, although he viewed other explanations as more likely. *See* White Dep. 13:13-14:6; 32:6-30; 33:21-24; 35:20-36:4; 45:14-21.

In short, the Court finds that Plaintiff has presented minimally sufficient facts from which a reasonable jury could conclude that Officer Thompson caused a blunt force head trauma to Mr. Harjo that resulted in his subdural hematoma and death, regardless whether the Court would reach the same conclusion. Therefore, Officer Thompson is not entitled to summary judgment on Plaintiff's § 1983 claim for using excessive force against Mr. Harjo.

**B.      Plaintiff's Claim Under GTCA**

Plaintiff claims the City is liable for any intentional or negligent conduct by Officer Thompson acting within the scope of his employment. The facts on which Plaintiff relies to establish this claim are the same ones that form the basis of Plaintiff's § 1983 claim against Officer Thompson. For the reasons discussed *supra*, the Court finds that Plaintiff has demonstrated a genuine dispute of material facts regarding his vicarious liability claim against the City.

The Court further finds, however, a determination that Officer Thompson was merely negligent in causing injury to Mr. Harjo would implicate a statutory exemption from liability provided by the GTCA.[7] This case does not involve a police officer's arrest of a criminal suspect but the officer's transport of an intoxicated patient from a hospital to

---

[7] The City does not assert that § 155(6) applies if it is determined Officer Thompson used excessive force in violation of the Oklahoma Constitution while acting within the scope of his employment. *See Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994, 1000 (Okla. 2013).

10

a detox center that the hospital deemed an appropriate discharge placement. Unlike a typical excessive force case, Officer Thompson was responding to a call for assistance from the hospital as part of its effort to prevent harm to Mr. Harjo due to his level of intoxication. Accordingly, Plaintiff's claim based on Officer Thompson's conduct seeks to impose liability on the City for a provision of protective services.

The GTCA provides an exemption for a loss that results from "the method of providing, police, law enforcement or fire protection." Okla. Stat. tit. 51, § 155(6). The state supreme court has held that "protection" is the operative word and "a governmental subdivision is not liable for deficiency of protective services extended by its police, law enforcement or fire fighting components." *Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1066 (Okla. 1999); *see Schmidt v. Grady Cty.*, 943 P.2d 595, 598 (Okla. 1997) (§ 155(6) applies to acts of employees engaged "in taking into protective custody and transporting a person" to detention). Under circumstances where a suicidal individual was shot and killed by law enforcement officers attempting to take him into protective custody, the Tenth Circuit has held that § 155(6) immunizes a political subdivision from liability for negligence of its employees. *See Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1321 (10th Cir. 1998); *see also Samuel v. City of Broken Arrow*, 506 F. App'x 751, 756 (10th Cir. 2012) (unpublished) (police officers responding to a domestic violence call were carrying out a police protection function and immunity applied). Similarly here, if a jury finds Officer Thompson negligently injured Mr. Harjo while transporting him from

11

the hospital to the detox center, the City is exempt from liability for Officer Thompson's conduct in the provision of protective services.

Because the resolution of a genuine dispute of material facts is required before the City's immunity can be determined, however, the City is not entitled to summary judgment on Plaintiff's claim against it based on Officer Thompson's conduct.

**Conclusion**

For these reasons, the Court finds that Plaintiff has demonstrated a genuine dispute of material facts that precludes summary judgment on both Plaintiff's § 1983 excessive force claim against Officer Thompson and Plaintiff's claim against the City under the GTCA. Sgt. Beasley's Motion has been rendered moot by Plaintiff's dismissal with prejudice of its § 1983 claim against him. *See supra* note 1.

IT IS THEREFORE ORDERED that Defendant City's Motion for Summary Judgment [Doc. No. 47] and Motion for Summary Judgment of Defendants Beasley and Thompson [Doc. No. 49] are DENIED, as set forth herein.

IT IS SO ORDERED this 25th day of May, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE